HUGH QUINN *vs.* MIDDLESEX ELECTRIC LIGHT COMPANY.

Middlesex.    Jan. 20. — Sept. 4, 1885.    COLBURN, J., absent.

A person, by attending at the hearing upon an application to the board of aldermen of a city for a license, under the Pub. Sts. *c.* 102, § 47, to set up and run a stationary steam-engine, and not objecting to the insufficiency in time of the notice of the hearing, waives longer notice to himself; and he cannot object that others had not due notice.

A license, under the Pub. Sts *c* 102, § 47, to set up and run a stationary steam-engine upon certain premises in a city, passes, without assignment, to a purchaser of the property.

A license, under the Pub. Sts. *c.* 102, § 47, to set up and run a stationary steam-engine of a specified horse-power, does not import authority to set up and run three such engines, although their combined power is no greater than that of the single engine.

TORT for a nuisance, namely, the maintenance and use of steam-engines, boilers, and machinery for generating electricity for lighting purposes at the defendant's works on Middle Street in Lowell, and within five hundred feet of the plaintiff's dwelling-house. Writ dated April 24, 1884.

At the trial in the Superior Court, before *Rockwell*, J., the defendant justified under a license granted to the Lowell Electric Light Corporation on March 20, 1883, being the same license set forth in the preceding case.

The plaintiff, in addition to the points taken in the preceding case, contended that the license was not valid, because fourteen days' notice of the time and place for the consideration of the application therefor had not been given, as required by the Pub. Sts. *c.* 102, § 41. It appeared that the application, and the order of the board of aldermen fixing a time and place for a hearing, were published in a Lowell newspaper on March 1, 2, and 3, 1883, and that a hearing was had thereon on March 13, 1883, which was the time appointed, at which hearing the plaintiff was present, and objected to the granting of the license, but made no objection to the insufficiency of the notice.

The plaintiff further contended, that the defendant had no authority to act under the license granted to the Lowell Electric Light Corporation. It appeared that in September, 1883, the last-named corporation sold and conveyed the real estate and personal property owned and occupied by it on Middle Street to the defendant company, by a bill of sale of the personal property in common form, and by a deed of the real estate, together with its privileges and appurtenances. There was no sale, transfer, or assignment of said license, except what passed by the sale of said real and personal estate. After the above conveyance the Lowell Electric Light Corporation retired from business.

The plaintiff further contended, that the defendant had no authority, under the license, to run more than one steam-engine. It appeared that three engines were run, under the following circumstances. The Lowell Electric Light Corporation erected a double-cylinder Corliss engine, whose capacity, when fully completed, would be two hundred and fifty horse-power. Before the purchase by the defendant, only one cylinder was attached, and the then capacity of the engine was one hundred and twenty-five

horse-power.   After said purchase, as the defendant required more power, it began negotiations in respect to the furnishing of the other cylinder, so that when completed the engine would be a regular double-cylinder Corliss engine: a letter was written to the manufacturers. stating that such additional cylinder was wanted, to be completed and attached as early as Christmas of said year; but, as the manufacturers were unable to do this, nothing further was done about the matter until the following March, when the cylinder was finally ordered. and put in after the date of the plaintiff's writ.   During the time covered by the plaintiff's writ, the defendant ran. in addition to the engine originally erected, two engines, each of fifty horse-power, and used them in connection with the main engine for the purpose of running its works.

The judge ruled in favor of the defendant on all of these points; and the plaintiff alleged exceptions.

*W. H. Anderson,* for the plaintiff.

*G. F. Richardson,* (*D. S. Richardson* with him,) for the defendant.

C. ALLEN, J.   1. The object in giving notice of an application for a license is, that persons interested may have an opportunity to be heard thereon.   The plaintiff in the present case had actual notice, and attended the hearing, and, by making no objection to the insufficiency of the notice, he waived longer notice to himself.   Under these circumstances, it is nothing to him whether other persons had due notice or not.   He cannot be heard to object that they did not.   *Hingham & Quincy Bridge & Turnpike* v. *Norfolk,* 6 Allen, 353, 357.

2. The present defendant may avail itself of the license given to its predecessors in title.   The license is not to be regarded as a personal trust, like a license to sell liquors or to keep an inn. *Commonwealth* v. *Hadley,* 11 Met. 66, 71.   Looking at all the provisions of the statute, it appears rather that whatever authority is conferred by the license passes with the property.

3. A license to set up and run a stationary steam-engine, not exceeding two hundred and fifty horse-power, will not authorize the use of three such engines, which together do not exceed that amount of power.   We cannot say that the use of three engines may not be more dangerous than the use of one engine of the

same amount of power, or that the municipal authorities, who were willing to grant a license for the latter, would also have been willing to grant one for the former. This is the case of a license to do an act which, without such license, would be a common nuisance. Pub. Sts. c. 102, § 48. If a license for three engines was desired, it should have been asked for, and obtained. if the mayor and aldermen saw fit to grant it. They constituted the proper tribunal to determine, in the first instance at least, how many engines might be used in a particular place. We think it safer and better in this particular to adhere to the letter of the statute, and to hold that a license to set up and run a single stationary steam-engine does not, by a fair implication, carry with it an authority to set up and run a greater number, though of no greater power.

Other questions involved in this case are determined in *Quinn* v. *Lowell Electric Light Corporation, ante,* 106.

*Exceptions sustained.*