**L.A. RAY REALTY et al.**

v.

**TOWN COUNCIL OF the TOWN OF CUMBERLAND et al.**

No. 90–328–A.

Supreme Court of Rhode Island.

Feb. 6, 1992.

Michael Kelly, John Webster, Adler, Pollock & Sheehan, Providence, for plaintiffs.

Richard E. Kirby, Woonsocket, for defendants.

OPINION

WEISBERGER, Justice.

This case comes before us on the plaintiffs' appeal from a judgment of dismissal of their complaint entered by the Superior Court and also from the denial of their motion for summary judgment. We reverse. The facts of the case are set forth in a stipulation to which the parties have agreed. Said stipulation of facts is set forth below.

"1. Appellants in the instant appeal include L.A. Ray Realty, Macklands Realty, Inc., Leo C. Beauregard & Sons, Inc., Savage Bros., Inc., and Eva Schofield; all of whom are land owners in the Town of Cumberland, Rhode Island.

"2. Appellants' properties are zoned Agricultural–A which designation permits the construction of single-family residential structures.

---

"3. By virtue of R.I. Gen. Laws § 45–23–2, *et seq.*, the Planning Board of the Town of Cumberland has the sole and exclusive power to control, promulgate, adopt or authorize the adoption of rules and regulations concerning the subdivision of land in the Town of Cumberland.

"4. Pursuant to R.I. Gen. Laws § 45–23–2, *et seq.*, the Planning Board, in September, 1987, adopted rules and regulations that govern and restrict the subdivision of land in the Town of Cumberland.

"5. Pursuant to R.I. Gen. Laws § 45–23–6, the Planning Board, at Section V, Article E(6), of the duly adopted Subdivision Regulations, has provided varying minimum lot sizes for subdivisions within the Town of Cumberland.

"6. In accordance with the duly adopted Subdivision Regulations, all of the Appellants could have or were in the process of subdividing lots in sizes ranging from 12,500 square feet to 80,000 square feet.

"7. The duly adopted Town Charter of the Town of Cumberland provides, in pertinent part, at Section 407(c), that the Town Council shall be the 'policy determining body of the Town' and that it shall have the power to enact, amend or repeal rules, ordinances and resolutions for the government of the Town which shall have to do with the preservation of the public peace, health, safety, welfare and comfort of the inhabitants and the protection of persons and property and other municipal functions.

"8. In August, 1988, the electors of the Town of Cumberland initiated a voter referendum to amend the Cumberland Zoning Ordinance to require a minimum lot size of two acres or approximately 87,000 square feet for any lot in an Agricultural A or B zoning district (the 'Referendum').

"9. The Referendum was approved by the voters on November 8, 1988, which took effect upon passage.

"10. The Referendum in effect created a new 'zoning district' which requires a minimum lot size of two acres without regard to the availability of public water and sewer. Prior to November, 1988, pursuant to the zoning ordinances and subdivision regulations of the Town of Cumberland, minimum lot sizes in all districts were determined by the availability of public water and sewer.

"11. On November 21, 1988, the Planning Board of the Town of Cumberland denied every application to subdivide property in an Agricultural–A district including, but not limited to, those of Appellants Ray, Savage, and Beauregard. The Board held that the aforementioned Referendum required such denial on the grounds that the applications did not comply with the Referendum.

"12. On January 18, 1989, the Town Council of the Town of Cumberland adopted an ordinance incorporating the Referendum into the zoning ordinance of the Town of Cumberland (the 'Ordinance').

"13. Pursuant to R.I. Gen. Laws, § 45–24–4(b), a zoning ordinance amendment which is general in scope requires written notice to all owners of real property within the area of proposed change and within 200 feet of the real property proposed for change.

"14. The Referendum and Ordinance affect more than forty (40%) percent of the acreage in the Town of Cumberland.

"15. Written notice was not provided to owners of real property within the area of proposed change and within 200 feet of the real property proposed for change.

"16. R.I. Gen. Laws § 45–22.2–1 *et seq.*, mandates that all local cities and towns adopt a Comprehensive Land Use Plan and that all zoning ordinances must be in conformity therewith.

"17. The Town of Cumberland has failed to adopt a Comprehensive Land Use Plan.

"18. The Referendum and Ordinance are not in conformance with the existing Zoning Ordinance and/or Zoning Map and/or the current uses of the Appellants' properties and/or the properties abutting Appellants' properties.

"19. The Zoning Ordinance of the Town of Cumberland and an Ordinance of the

Town Council dated June 28, 1974 prohibit the introduction of successive petitions to amend the Zoning Ordinance of the Town of Cumberland.

"20. Specifically, the Ordinance provides in pertinent part that:

" 'No petition for an amendment to the Zoning Ordinance including the Zoning Map * * * shall be accepted by the Clerk of the Town Council * * * if a petition or application praying for the same amendment * * * has been denied * * * within the preceding six (6) months * * *.'

"21. On July 6, 1988, Marlene Smith, former Town Councillor, presented an ordinance creating minimum lot sizes of two acres or greater in Agricultural A and B zoning districts.

"22. On August 3, 1988, that ordinance was defeated by the Cumberland Town Council.

"23. On December 21, 1988, less than six months later, former Councilmember Smith presented an ordinance once again requiring two acre minimum lot sizes in an Agricultural A zoning district which was adopted on January 18, 1989.

"[24.] As a result of the above actions taken by the Town of Cumberland, in January, 1989, a Complaint was filed in the Superior Court on behalf of the named Appellants and captioned *L.A. Ray Realty, et al. v. The Town Council of the Town of Cumberland, et al.* C.A. # 89–0449.

"[25.] Motions for Summary Judgment were subsequently filed on behalf of Appellants and Appellees with a hearing of the same held on January 23, 1990.

"[26.] On January 23, 1990, Appellants' Motion for Summary Judgment was denied; the Appellees' Motion for Summary Judgment was considered by the Court, sua sponte, as a Motion to Dismiss; and Appellants' action was dismissed as to all counts.

"[27.] On February 28, 1990, a Notice of Appeal was filed on behalf of the above-named Appellants."

As will be noted from the stipulation of facts, plaintiffs contend that an ordinance initiated by the electors of the town of Cumberland and providing for a minimum lot size of two acres for any lot in an agricultural A or B zoning district is invalid as inconsistent with the provisions of G.L. 1956 (1988 Reenactment) chapters 23 of title 45, which governs the subdivision of land, and chapter 24 of title 45, which is the enabling act allowing city and town councils to adopt zoning ordinances. The plaintiffs raise a number of constitutional issues as well, but we need not reach the constitutional issues since we regard this case as controlled by the foregoing comprehensive statutes that govern the instant controversy.

It should be noted that § 45–23–2 authorizes city and town councils to appoint plan commissions and to empower such commissions to adopt, modify, and amend rules and regulations to control the subdivision of land in each of the municipalities. Such a plan commission was appointed for the town of Cumberland and did, as indicated in stipulation 6, promulgate subdivision regulations governing the size of lots within the relevant areas. It should also be noted that §§ 45–24–2 and 45–24–3 authorize each city or town council to adopt a comprehensive plan through ordinances to govern land use, to prevent the overcrowding of land, to avoid undue concentration of population, and to encourage the most appropriate use of land throughout the town or municipality.

These general grants of power by the Legislature to city and town councils would obviously authorize ordinances and regulations to be issued either by the plan commission or the city or town council that would govern and establish, among other requirements, minimum lot sizes for the erection of dwellings. It is significant to observe that both §§ 45–23–4 and 45–24–4 require the plan commission (in the case of chapter 23) and the city or town council (in respect to chapter 24) to give notice of a public hearing prior to adopting or amending rules or regulations relating either to subdivision of land or to zoning ordinances. Further, § 45–24–4(b) requires a city or town council to issue individual notices when a proposed amendment to an existing

ordinance includes a change in an existing zoning map.[1] The purpose of these notice requirements, either by publication or individual notice, is to give the owners of affected property or those who may be interested in proposed zoning or subdivision amendments an opportunity to come before the relevant body, either plan commission or municipal council, and express their opinions. The hearing gives interested parties a chance to make their views known to the governing body and to testify or argue either for or against the proposed regulation or amendment. We have held that such public notice is a jurisdictional prerequisite to the validity of the proposed modification. *Quigley v. Town of Glocester*, 520 A.2d 975 (R.I.1987). *See also Federal Building & Development Corp. v. Town of Jamestown*, 112 R.I. 478, 312 A.2d 586 (1973).

The rationale behind this jurisdictional imperative was set forth in *Golden Gate Corp. v. Town of Narragansett*, 116 R.I. 552, 359 A.2d 321 (1976), as the requirement that when a statute mandates a hearing to which the public is invited and at which it is to be afforded the opportunity to be heard, the right to be heard implicitly carries with it " 'a reasonable hope of being heeded.' " *Id.* at 562, 359 A.2d at 326. We reemphasized this proposition in *Quigley*, 520 A.2d at 979, also noting that a zoning ordinance is a restriction on a land-estate owner's common law right to the unfettered use of his or her land.

This requirement of a meaningful public hearing and the rights of land owners that underlie the requirement cannot be compatible with an ordinance adopted by an initiative or referendum. In the town of Cumberland, as in other municipalities throughout the state, the electorate consists of many thousands of individuals. No meaningful public hearing could be held that could possibly carry with it a reasonable hope of being heeded.

In *Township of Sparta v. Spillane*, 125 N.J.Super. 519, 312 A.2d 154 (1973), a sim-

ilar problem was encountered by the Appellate Division of the New Jersey Superior Court. There a statewide statute (as opposed to a municipal-charter provision) authorized the adoption and amendment of ordinances by the voters of any municipality. Pursuant to this authority the voters of the township of Sparta adopted an amendment to the zoning ordinance by referendum. In a companion case the voters of the township of Mount Olive also adopted an amendment to the zoning ordinance by referendum. In a declaratory-judgment proceeding the opinion of the court was sought to determine whether the referendum provisions of the statute (Faulkner Act) were applicable to amendments of a zoning ordinance. The Appellate Division affirmed the rulings of the trial judges that the referendum procedure was not applicable to the amendment of a zoning ordinance. In so holding, the court emphasized that certain aspects of the zoning statute seemed inherently incompatible with the referendum process. Among the elements of incompatibility was the very likely probability that the publicity that might accompany the referendum campaign and the exposure and discussion of the issues generated thereby would not be a substitute for the public hearings that would normally be required by the zoning statute prior to adoption or amendment.

In *Westgate Families v. County Clerk of the Incorporated County of Los Alamos*, 100 N.M. 146, 667 P.2d 453 (1983), the Supreme Court of New Mexico, after considering the statewide zoning statute as a whole, determined that the act required that zoning be carried out by representative bodies and not by referendum. A similar holding was enunciated in *Elliott v. City of Clawson*, 21 Mich.App. 363, 175 N.W.2d 821 (1970). In that case the Michigan Appellate Court reasoned that the requirement of public notice and hearing in the adoption and amendment of zoning ordinances was " 'hopelessly inconsistent' "

---

**1.** It is argued by defendant in the instant case that the amendment adopted by popular vote did not require a change in the zoning map. For purposes of this opinion we shall assume that defendant's contention is correct. How-

ever, we note this provision only in determining whether the adoption of an ordinance by initiative or referendum is compatible with the hearing requirements set forth in the general enabling acts.

and in conflict with the initiative and referendum authorized by the city charter. *Id.* at 367, 175 N.W.2d at 823. The court suggested that it would be an idle proceeding for the board of trustees, after an initiative petition is presented to it, to enter upon an investigation of a proper zoning plan, to give notice of and conduct hearings for the benefit of interested property owners and the public in general, and at the conclusion of its deliberations to have no power to change the terms of the proposed ordinance. *Id.*

We believe that the rationale of these cases applies forcefully to the instant controversy. The safeguards and procedural requirements incident to the adoption or amendment of subdivision regulations or zoning ordinances contained in the general enabling acts are inconsistent with and incompatible with the exercise of direct legislation by the voters through the initiative or referendum process. A consideration of our subdivision and zoning statutes in their entirety would make such inconsistencies and incompatibility apparent. These statutory provisions are of statewide application and cannot be superseded by the authority of a municipal home-rule charter. *See Cranston v. Hall,* 116 R.I. 183, 354 A.2d 415 (1976).

The defendant has relied heavily upon an opinion by the Supreme Court of the United States in *Eastlake v. Forest City Enterprises, Inc.,* 426 U.S. 668, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976). This opinion dealt only with the applicability of the United States Constitution to a referendum provision authorized by the Ohio Constitution. In that case the Supreme Court of Ohio had held that the Federal Constitution would not allow amendments to zoning ordinances by popular initiative and/or referendum since it was a delegation of power violative of federal constitutional guarantees. The Court in an opinion delivered by Chief Justice Burger held only that the Federal Constitution did not inhibit the enforcement of such a provision in the Ohio Constitution. Nor, it determined, was the referendum process in itself violative of the due process clause of the Fourteenth Amendment. In the case at bar we are not construing either the United States Constitution or the Constitution of the State of Rhode Island. We are considering only the compatibility of the charter provision of the town of Cumberland authorizing a referendum in respect to land use with the statutory enabling acts relating to the subdivision of land and the adoption or amendment of zoning ordinances. No constitutional adjudication is required to resolve the instant controversy.

We have held that the initiative and referendum provision of the charter of the town of Cumberland would not be competent to authorize the procedure to be used to adopt or to amend either a regulation for the subdivision of land or an ordinance regulating zoning in the town. This holding is based upon the inconsistency between the adoption of ordinances by initiative and referendum and the procedural safeguards contained in the general enabling statutes. It is therefore unnecessary for us to consider the other issues raised by the parties.

For the reasons stated, the plaintiffs' appeal is sustained and the judgment of dismissal of the plaintiffs' complaint is hereby reversed. The case may be remanded to the Superior Court with directions to enter summary judgment in favor of the plaintiffs.